IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CATERPILLAR FINANCIAL SERVICES CORPORATION, ) ) | CASE NO.  5:06 CV 2097 |
| Plaintiff, ) ) | |
| v. ) ) | JUDGE DONALD C. NUGENT |
| FIRSTMERIT CORPORATION, et al., ) ) | |
| Defendants. ) | MEMORANDUM OPINION AND ORDER |

This matter is before the Court on the Motion of Plaintiff Caterpillar Financial Services Corporation for Summary Judgment (ECF #79), and Defendant's Motion for Summary Judgment, (ECF # 80).  The parties agree that there are no material facts in dispute, and that summary judgment, as a matter of law, is appropriate.  They filed a Joint Stipulation of Facts with the Court on July 24, 2008.  (ECF #73).

## **FACTS**[1]

In July of 2004, Smith & Johnson (a non-party) entered into a purchase money security agreement to buy three Caterpillar machines from Beckwith Machinery Company ("Beckwith")

---

[1] The relevant facts in this case have been established by the parties through a Joint Stipulation.

(also a non-party). (Joint Stipulation ¶ 1). The purchase money security agreement included a security interest in the purchased machines ("the collateral") and any proceeds resulting from a sale of that collateral. (Joint Stipulation ¶3). It also contained a provision barring Smith & Johnson from selling, mortgaging, pledging, or otherwise encumbering the collateral. (Joint Stipulation ¶4). The security agreement was assigned to Plaintiff, Caterpillar Financial Services Corporation ("Caterpillar") a week later. (Joint Stipulation ¶ 2).

In December of 2004, Smith & Johnson entered into another purchase money security agreement to purchase two additional machines from Beckwith. (Joint Stipulation ¶4). That agreement was assigned to Caterpillar on January 11, 2005. (Joint Stipulation ¶5). Again, the machines and any proceeds from their sale were listed as collateral in this agreement. Beckwith properly filed UCC-1 Financing Statements for the collateral, including proceeds, in both agreements. (Joint Stipulation ¶6).

In March of 2005, Smith & Johnson obtained a ten million dollar ($10,000,000) line of credit from Defendant, FirstMerit Bank, N.A. ("FirstMerit"). (Joint Stipulation ¶8). Smith & Johnson executed a Revolving Credit and Term Loan And Security Agreement ("Credit Agreement") to secure the line of credit. (Joint Stipulation ¶9). As part of the Credit Agreement, the borrower, Smith & Johnson made representations and warranties to FirstMerit, including the following:

> As security for the full and timely payment of the Obligations in accordance with the terms hereof, the Borrower agrees that the Bank shall have, and the Borrower hereby grants to and create [sic] in favor of the Bank, a Lien in and to the Collateral. The Bank's Lien in the Collateral is a valid, enforceable, and perfected Lien, first and prior to all other Liens other than Permitted Liens, and the Borrower has not taken or caused to be taken any action which has deprived the Bank of such a Lien .

(Plaintiff's SJ Motion, Ex. 8, Section 4 ("Representations and Warranties"), subsection 4.12 ("Perfection of Lien")).  Smith & Johnson also provided covenants, including that

> The Lien created hereunder shall be prior in interest to any other Lien affecting the Collateral (other than Permitted Liens), and shall be and remain in full force and effect until all of the Obligations shall have been paid and discharged in full and otherwise satisfied ... .

(Plaintiff's SJ Motion, Ex. 8, Section 5 ("Covenants"), subsection 5.14 ("Creation of Lien")). Schedule 5.28 lists the "Permitted Liens," and includes "many filings on various pieces of equipment" by Caterpillar Financial Services Corporation.

> The Miscellaneous provisions of the contract also include a provision that states:
>
> [n]othing expressed or implied in any of the Loan Documents is intended or shall be construed to confer upon or give any Person other than the parties hereto and their successors or assigns, any rights or remedies under or by reason of the Loan Documents.

(Plaintiff's SJ Motion, Ex. 8, Section 8 ("Miscellaneous"), subsection 8.11 ("Entire Agreement").

In July of 2005, the loan and Credit Agreement were amended to increase the credit line to fifteen million dollars ($15,000,000), and to broaden the scope of FirstMerit's blanket lien on Smith & Johnson's assets.  (Joint Stipulation ¶8,10).   The revised blanket lien secured all of Smith & Johnson's assets, including equipment and deposit accounts.  (Joint Stipulation ¶9, 10). FirstMerit filed two (2) UCC Financing Statements to perfect its blanket lien, and perfected its security interest in the deposit account by exercising control.  (Joint Stipulation ¶10, 19).

In September of 2005, Smith and Johnson sold the Caterpillar trucks without obtaining permission from Caterpillar in violation of their obligations under the purchase money security agreement.  (Joint Stipulation ¶13).  The proceeds of this sale were wired into Smith &

Johnson's deposit account at FirstMerit Bank. (Joint Stipulation ¶ 14,1 8). FirstMerit swept these funds from the deposit account and applied the proceeds to reduce the principle balance on Smith & Johnson's line of credit. (Joint Stipulation ¶14).

## **STANDARD**

Summary judgment is appropriate when the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing FED. R. CIV. P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. The court will view the summary judgment motion in the light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir. 1995) (citing *Celotex*, 477 U.S. at 322). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be

evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995) (citing *Anderson*, 477 U.S. at 252). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. *Anderson*, 477 U.S. at 249-50 (citations omitted). In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252. However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the non-mover. The non-moving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995). FED. R. CIV. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

The Federal Rules identify the penalty for the lack of such a response by the nonmoving party as an automatic grant of summary judgment, where otherwise appropriate. *Id.*

In sum, proper summary judgment analysis entails "the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250.

## ANALYSIS

### A. UCC Priority

Ohio codified the Uniform Commercial Code in Title 13, Chapter 1309 of the Ohio Revised Code. Section 1309.324 (UCC 9-324) gives a perfected purchase money security interest in the identifiable proceeds of secured goods priority over all conflicting security interests, *except* when those proceeds become part of a deposit account that is controlled by a competing secured party. Specifically, §1309.324 states that

> a perfected purchase money security interest in goods other than inventory or livestock has priority over a conflicting security interest in the same goods, and *except as otherwise provided in section 1309.327* of the Revised Code, a perfected security interest in its identifiable proceeds also has priority, if the purchase money security interest is perfected ... .

(Emphasis added.). Section 1309.327(A), the exception to the above rule, provides that

> [a] security interest held by a secured party having control of a deposit account under section 1309.104 of the Revised Code has priority over a conflicting security interest held by a secured party that does not have control.

It is undisputed that Caterpillar had a perfected purchase money security interest in the identifiable proceeds of the equipment that Smith & Johnson sold. It is also undisputed that FirstMerit Bank had a security interest, perfected by control, in the deposit account that received the proceeds from that sale. Pursuant to the UCC provisions set forth above, FirstMerit's interest takes priority over Caterpillar's interest under these circumstances.

### B. Contractual Subordination

Caterpillar does not dispute that the above UCC provisions are applicable, or that they

-6-

establish a priority in favor of FirstMerit.  Instead, Caterpillar argues that FirstMerit contractually subordinated its interest in the proceeds deposited into Smith & Johnson's account to Caterpillar's interests.  The order of priority established by the UCC can be effectively altered by a subordination agreement. O.R.C. § 1309.339 ("Nothing in this chapter precludes subordination by agreement by any person entitled to priority.").

Although there is no dispute that Caterpillar and FirstMerit had no contract or agreement to this effect, Caterpillar contends that it is the third-party beneficiary to a loan agreement between Smith & Johnson and FirstMerit. Caterpillar further contends that the loan agreement at issue includes an agreement by FirstMerit to subordinate its claims to those of Caterpillar.  For the reasons that follow, this Court finds that Caterpillar is wrong on both of these arguments.

Under Ohio law, in order to have an enforceable third-party claim under a contract, the third party (Caterpillar) must prove that the promisee intended to direct a benefit on the third party.  *Grant Thornton v. Windsor House, Inc.*, 57 Ohio St. 3d 158 (1991).  Caterpillar has two problems fulfilling this requirement.  First, the explicit language of the contract states that neither of the signatories intended to benefit any third party.  Second, FirstMerit made no promises to subordinate its interest in the collateral to Caterpillar or any of the other permitted lien holders.

Unambiguous language in the agreement between Smith & Johnson and FirstMerit specifically belies the contention that either party intended the agreement to benefit Caterpillar in any way. The parties specifically agreed that  "[n]othing expressed or implied in any of the Loan Documents is intended or shall be construed to confer upon or give any Person other than the parties hereto and their successors or assigns, any rights or remedies under or by reason of

-7-

the Loan Documents." (Plaintiff's SJ Motion, Ex. 8, Section 8 ("Miscellaneous"), subsection 8.11 ("Entire Agreement")). Where the terms of a contract are unambiguous, given the ordinary meaning of the words used, a court should not look beyond the clear language of the agreement. *See, e.g., Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St. 2d 241 (1978). The language in this agreement clearly proves that this agreement was not intended to benefit any third party.

Further, FirstMerit was not a "promisee" relative to any interest held by Caterpillar. FirstMerit did not make any promises regarding its priority *vis a vis* Caterpillar's prior "permitted liens." Smith & Johnson made disclosures and covenants to FirstMerit informing the bank of prior liens on the collateral offered as security for their loan agreement. In those disclosures, Smith & Johnson promised FirstMerit that it would have a "valid, enforceable, and perfected lien, first and prior to all other Liens other than Permitted Liens." (Plaintiff's SJ Motion, Ex. 8, Section 4 ("Representations and Warranties"), subsection 4.12 ("Perfection of Lien")). FirstMerit made no promises whatsoever in these sections.

In fact, read carefully, even Smith & Johnson made no actual promise that the "permitted liens" had priority. The effect of the disclosure was not to "promise" other lien holders that their liens were first, and prior to FirstMerit; rather, the disclosures simply allowed Smith & Johnson to *avoid promising* FirstMerit that its lien would be first and prior when considered in conjunction with those already existing "permitted liens." Finally, even if these sections could be read to express an opinion or assurance that Smith & Johnson believed that Caterpillar and the other permitted lien holders had interests in the collateral that took priority over FirstMerit's interest, that would have no bearing on which secured party actually took priority under the law.

In actuality, under the UCC, Caterpillar did have the priority interest in the proceeds

-8-

from the sale of equipment at the time the Loan Agreement was signed. Further, had those proceeds not been wired into the deposit account held by FirstMerit, Caterpillar would have retained that priority even after the amended agreement which gave FirstMerit a blanket lien over Smith & Johnson's collateral and accounts. Unfortunately for Caterpillar, however, when those proceeds were deposited into the FirstMerit deposit account, the priority shifted pursuant to §1309.324 and §1309.327(A). Because FirstMerit had obtained a security interest in the deposit account, and perfected it through control of that account, the exception to the general rule prioritizing purchase money security interests was triggered, and the priority shifted to the benefit of FirstMerit.

## CONCLUSION

For the reasons set forth above, the Defendants' Motion for Summary Judgment is GRANTED (ECF #80); the Motion of Plaintiff Caterpillar Financial Services Corporation for Summary Judgment, is hereby DENIED. (ECF #79). IT IS SO ORDERED.

      /s/Donald C. Nugent
      DONALD C. NUGENT
      United States District Judge

DATED:  October 15, 2008